NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>INN AT WOODBRIDGE,<br><br>        Debtor. | On Appeal from an Order for the United States Bankruptcy Court, District of New Jersey |
| JAMES K. WOLOSOFF, AKA KENNETH JAMES WOLOSOFF,<br><br>        Appellant,<br><br>v.<br><br>WBCMT 2006-C24 WOOD AVENUE, LLC, a New Jersey limited liability company<br><br>        Appellee. | Civ. No. 14-7251<br>Civ. No. 14-7513<br>(consolidated)<br><br>OPINION |

THOMPSON, U.S.D.J.

      This matter has come before the Court on an appeal brought by James K. Wolosoff ("Appellant") of the Order issued by the Bankruptcy Court on March 14, 2014 (the "Order") in the above-referenced adversary proceeding (the "Adversary Proceeding") and the Final Judgment for Sum Certain entered on October 7, 2014 (the "Final Judgment") in the Adversary Proceeding. (Doc. No. 3, Appellant's Br., at 1). The Bankruptcy Court's Order granted summary judgment against Appellant as to his liability under certain sections of a Limited Recourse Obligations Guaranty (the "Guaranty"). (*See* Doc. No. 2, Appendix of Items Designated to be Included in the Record on Appeal, at 667-683). Appellee, the other party to the Guaranty and the party to whom judgment was awarded in the Order and the Final Judgment,

1

opposes Appellant's appeal and further appeals a decision by the Bankruptcy Court entered on November 21, 2014 granting Appellant's Motion for Extension of Time to File Notice of Appeal. (Doc. No. 11., Appellee's Br., at 1). Appellant opposes Appellee's appeal. (Doc. No. 13, Appellant's Opp., at 13-16). These two appeals have been consolidated per an order of this Court entered on December 15, 2014. (Doc. No. 8). The Court has decided these appeals based on the submissions of the parties and without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated below, both parties' appeals will be denied.

## BACKGROUND

The Court assumes the parties' familiarity with the facts of this case and only summarizes here those facts pertinent to the Court's opinion. Appellant is the President of Metroplaza Hotel Holdings, Inc. ("Holdings"), which is the managing member of Metroplaza Hotel, LLC ("Metroplaza"). (Doc. No. 3, Appellant's Br., at 5). Appellant is also the President, sole shareholder and director of the Inn at Woodbridge, Inc. d/b/a Woodbridge Hilton (the "Inn"). (*Id*.) Metroplaza was the owner of a hotel/office property (the "Property") known as the Woodbridge Hilton, which is located in Metropark, New Jersey. (*Id*. at 10). The Inn operated the hotel functions at the Property. (*Id*.). On November 29, 2005, Metroplaza and the Inn entered into a number of financing agreements with Artesia Mortgage Capital Corporation (the "Lender"). (*Id.* at 11). Among these agreements were a mortgage on the Property and a fixed rate note for $36 million, which was executed by Metroplaza alone (the "Note"). (*Id.* at 11–12). On the same day, Appellant entered into a Limited Recourse Obligations Guaranty with the Lender which stated that if Metroplaza filed for bankruptcy, Appellant would be personally liable for the outstanding balance on the Note. (Doc. No. 11, Appellee's Br., at 1). The Lender's rights under these financing agreements, including the Guaranty, were assigned to Appellee. (Doc. No. 3, Appellant's Br., at 12).

On December 6, 2012, Metroplaza and the Inn each filed Chapter 11 cases before the Bankruptcy Court. (*Id*. at 14). During the course of their bankruptcies, Metroplaza and the Inn reached a settlement with Appellee (the "Settlement") which provided for the transfer of ownership of the Property to Appellee and included a mutual release (the "Release"); the Release, however, specifically exempted Appellee's right to enforce the Guaranty against Appellant. (*Id*. at 17–21). Appellee did pursue enforcement of the Guaranty against Appellant in an adversary proceeding before the Bankruptcy Court, which resulted in the Bankruptcy Court's granting summary judgment to Appellee on the issue of whether Appellant was liable to Appellee under the Guaranty. (*Id*. at 7). Subsequent to that decision, the parties stipulated as to a final judgment against Appellant in the amount of $20,000,000, with Appellee agreeing not to seek enforcement of the judgment until Appellant had an opportunity to appeal the Bankruptcy Court's decision as to liability under the Guaranty. (*Id*.).

## JURISDICTION AND LEGAL STANDARD

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). A district court exercises plenary review over the legal conclusions of a bankruptcy court. *See Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir. 1995).

## ANALYSIS

I.  **APPELLANT'S APPEAL**

Appellant appeals the Bankruptcy Court's decision regarding the enforceability of the Guaranty. There is no dispute as to the interpretation of the terms of the Guaranty; instead, Appellant argues that the Guaranty should not be enforced for a number of reasons: that its enforcement in this case would constitute a breach of the covenant of good faith and fair dealing; that the Guaranty tends to induce a breach of fiduciary duty and thus contravenes public policy; and that the Guaranty amounts to an unenforceable penalty. (Doc. No. 3, Appellant's Br., at 2–

3

4). Appellant also argues that Appellee is judicially estopped from enforcing the Guaranty because of certain representations made by Appellee in the process of transferring the Property. (*Id*. at 4).

As an initial matter, the Court notes that the New Jersey Supreme Court has instructed that, when there is a debate over whether a provision of a contract negotiated by two sophisticated parties can be enforced,

> Courts generally should not tinker with a finely drawn and precise contract entered into by experienced business people that regulates their financial affairs. Equitable relief is not available merely because enforcement of the contract causes hardship to one of the parties. *Dunkin' Donuts of America, Inc. v. Middletown Donut Corp.*, 100 N.J. 166, 183-84, 495 A.2d 66 (1985). A court cannot "abrogate the terms of a contract" unless there is a settled equitable principle, such as fraud, mistake, or accident, allowing for such intervention. *Id.* at 183, 495 A.2d 66.

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates*, 864 A.2d 387, 395 (N.J. 2005). Accordingly, the Guaranty must be enforced unless Appellant is able to point to a settled principle of law that applies in these circumstances and precludes enforcement. *See id.*

**A.  Breach of the Implied Covenant of Good Faith and Fair Dealing**

Appellant's argument against enforcement of the Guaranty with regard to the covenant of good faith and fair dealing boils down to an assertion that enforcement of the Guaranty would provide an unfair windfall to Appellee, given that Appellee has already taken title to the Property per the terms of the Settlement. (Doc. No. 3, Appellant's Br., at 28–31). The Settlement contains an exchange of releases, which released Metroplaza and the Inn from any claim by Appellee and vice versa. (*Id*. at 19–21). The Release, however, explicitly carves out Appellee's claim against Appellant through the Guaranty:

> Effect of Agreement as to Wolosoff.  Notwithstanding anything to the contrary in this Agreement, the Parties agree that, in no case or instance shall (i) the execution of this Agreement or any document executed in connection herewith (including the Transfer Documents) by Lender or Wolosoff, (ii) the

4

> provisions of this Agreement or any such other document or (iii) the performance of this Agreement or any such other document (including the consummation of the Transfers) waive, modify, reduce, increase or otherwise affect the rights or claims of Lender and/or defenses or claims of Wolosoff as between each other pertaining to the Guaranty Claim, except for any reduction in the Guaranty Claim to reflect the fair market value of the Hotel and the Office Building.

(Doc. No. 3, Appellee's Br., at 21). Every contract contains an implied covenant of good faith and fair dealing, and while a party's performance under a contract may, in certain circumstances, violate the implied covenant, the implied covenant cannot override an express term in the contract. *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001). Quoting the Restatement (Second) of Contracts, the New Jersey Supreme Court has explained that "[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectation of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." *Id*. (quoting *Restatement (Second) of Contracts* § 205 cmt. a (1981)).

Here, Appellant does not argue that there is anything in the way that Appellee is seeking to enforce the Guaranty that breaches the implied covenant of good faith and fair dealing; instead, he argues that any attempt to enforce the Guaranty in light of the Settlement would be a breach of the implied covenant. However, given that the Guaranty existed before the parties negotiated the Settlement, and that they specifically exempted the Guaranty from the Release when negotiating the Settlement, there is nothing unfair about Appellee's seeking to enforce the Guaranty now. It cannot be said that enforcing the Guaranty in this circumstance would violate community standards of decency, fairness or reasonableness. *See Monroe Center II Urban Renewal Co., LLC v. Strategic Performance Fund-II, Inc.*, No. C-52-08, 2010 WL 5343317 at *2–3 (N.J. Super. Ct. App. Div. 2010) (upholding trial court's grant of summary judgment to

5

lender seeking to enforce a limited recourse guaranty in a real estate development project despite argument from guarantor that enforcement of guaranty violated implied covenant of good faith and fair dealing.)  If anything, it would be unfair to fail to enforce the Guaranty since Appellee likely negotiated the Settlement with the intent to pursue the Guaranty.  The Court also notes that Appellant does not cite to any cases that are factually similar to the situation presented here; instead, he cites to general principles of law and asserts that they apply here.  The Court is not persuaded by Appellant's arguments, and, furthermore, finds that the applicable law regarding the implied covenant of good faith and fair dealing does not preclude enforcement of the Guaranty.  Accordingly, Appellant is denied relief on this ground.

**B.  Public Policy Grounds**

Appellant next argues that the Guaranty should not be enforced because it violates public policy. (Doc. No. 3, Appellant's Br., at 31).  Appellant's argument is that the Guaranty, if enforceable, would have created a conflict of interests between Appellant in his personal capacity as the guarantor under the Guaranty on the one hand, and in his capacity as fiduciary of Metroplaza and the Inn on the other hand.  (*Id* at 31-32).  Essentially, because the Guaranty would provide a strong disincentive for Appellant, as director of the Inn and Metroplaza, to lead those entities to declare bankruptcy, which may have been in their and their shareholders' best interests, it tended to induce Appellant to breach his fiduciary duties.

Under New Jersey law, certain contractual provisions can be found unenforceable because they violate public policy.  *See, e.g., Marcinczyk v. State of New Jersey Police Training Com'n*, 5 A.3d 785, 789–90 (N.J. 2010) (discussing whether an exculpatory clause is enforceable).  Appellant points out that the Restatement (Second) of Contracts § 193 instructs that a promise by a fiduciary to violate her fiduciary duty should be unenforceable under this same doctrine, as should a promise that tends to induce a violation of a fiduciary duty.  However,

6

Appellant cites no case in New Jersey applying this section of the Restatement to invalidate any contract, let alone a guaranty similar to the one at issue in this case. While the Court does not disagree that contracts that would require a violation of a fiduciary duty would likely not be enforceable, the Court is not at all convinced that the Guaranty either required or tended to induce the breach of a fiduciary duty. Appellant's precise argument was addressed and rejected by the New York Supreme Court, New York County, which stated that "[t]he legitimacy of such common arrangements is not subject to question under any theory of commercial law of which the court is aware. The court sees no distinction between this set of facts and those involving any parent corporate guaranty of a debt of a subsidiary." *UBS Commerical Mortg. Trust 2007-FL1 v. Garrison Special Opportunities Fund L.P.*, No. 652412/2010, 2011 WL 4552404 at *6 (N.Y. Sup. Ct. Mar. 8, 2011). The Superior Court of Massachusetts, Suffolk County, also rejected this argument, stating "[i]f public policy is implicated here at all, in the Court's view it favors enforcement of the guaranty, since a contrary result would undermine the commercial value of loan guaranties in general, with a resulting negative effect on availability of credit. The Court perceives no public policy that prohibits enforcement of the guaranty." *Baynorth Realty Fund VI, L.P. v. Shoaf*, No. 09-4303-BLS2, 2010 WL 5071831 at *4–5 (Mass. Supp. Oct. 19, 2010). The Court agrees with the reasoning of the New York Supreme Court and the Massachusetts Superior Court; the Guaranty is not unenforceable on public policy grounds because it tends to induce a breach of fiduciary duty. Appellant is denied relief on this ground.

## C. Unreasonable Penalty

Appellant's next argument is that the Guaranty should not be enforced because it constitutes an unreasonable penalty. (Doc. No. 3, Appellant's Br., at 36-39). Again, Appellant cites no case that holds that a limited recourse guaranty is a liquidated damages clause, much less one so unreasonable that it constitutes an unenforceable penalty. Under New Jersey law,

contractual provisions that provide for specific damages, which are generally called liquidated damages, may be unenforceable as penalties if they are so large as to be unreasonable or oppressive. *See MetLife Capital Fin. Corp. v. Washington Ave. Associates, L.P.*, 732 A.2d 493, 498–99, (N.J. 1999). Appellant's argument, however, has been specifically addressed by the New Jersey Superior Court, Appellate Division, in a case involving a similar guaranty. There, the court rejected the argument that a recourse carve-out clause of a nonrecourse loan was a liquidated damages provision, finding instead that it "operate[d] principally to define the terms and conditions of personal liability" and "provide[d] only for actual damages." *CSFB 2001-CP-4 Princeton Park Corporate Ctr., LLC v. SB Rental I, LLC*, 410 N.J. Super 114, 121–22 (N.J. Super. Ct. App. Div. 2009). Because it was not a liquidated damages provision, the recourse carve-out could not be a penalty. *See id*. The Guaranty here is functionally equivalent to the recourse carve-out in the *CSFB* case: it serves to define the terms and conditions of the guarantor's personal liability. As such, it is not a penalty, and Appellant is denied relief on this ground.

**C.  Judicial Estoppel**

Appellant's final argument is that Appellee is judicially estopped from seeking enforcement of the Guaranty. (Doc. No. 3, Appellant's Br., at 40–42). This argument focuses on the fact that when Appellee took title to the Property per the terms of the Settlement, that it represented to the Clerk of Middlesex County and the New Jersey Division of Taxation that the mortgage had been paid, which, Appellant argues, is inconsistent with Appellee's attempts to enforce the Guaranty. (*Id*. at 41). The doctrine of judicial estoppel can be applied to prevent a party from asserting a different position from the one it is currently seeking to assert where the positions are "irreconcilably inconsistent," "adopted in bad faith" and there is a showing that applying the doctrine "addresses the harm and no lesser sanction is sufficient." *MD Mall*

8

*Associates, LLC v. CSX Transp. Inc.*, 715 F.3d 479, 486 (3d Cir. 2013) (quoting *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009)). The New Jersey Supreme Court has remarked that the doctrine of judicial estoppel is an "extraordinary remedy that courts invoke only when a party's inconsistent behavior will otherwise result in a miscarriage of justice." *State v. Jenkins*, 840 A.2d 242, 249 (N.J. 2004) (internal quotations omitted). Again, Appellant cites to no case that is remotely factually similar to this case. Even if Appellee's representations to the Clerk of Middlesex County and the New Jersey Division of Taxation could be considered as positions taken in a judicial or quasi-judicial proceeding, there is nothing inconsistent with Appellee's seeking to enforce the personal Guaranty against Appellant and its statement that the mortgage executed by Metroplaza and the Inn had been paid. Additionally, the Settlement, which provided for the transfer of the Property, explicitly carves out Appellee's right to pursue enforcement of the Guaranty against Appellant. Thus, there is no indication that Appellee has acted in bad faith. Accordingly, Appellee is not judicially estopped from pursuing the Guaranty, and Appellant is denied relief on this ground.

## II.     APPELLEE'S APPEAL

Appellee appeals the Bankruptcy Court's decision that, though Appellant filed his notice of appeal one week late, there was excusable neglect which permitted Appellant an extension of time. (Doc. No. 11, Appellee's Br., at 23). A district court reviews a bankruptcy court's determination of excusable neglect for abuse of discretion. *In re Kaplan*, 482 Fed. App'x 704, 707 (3d Cir. 2012). The factors that should be evaluated in considering excusable neglect include "(1) the danger of prejudice to the non-movant, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Id.* (internal quotes and brackets in original removed). There is no indication here that Appellee was

prejudiced by the Bankruptcy Court's decision or that there was any bad faith on the part of Appellant. Additionally, the delay was only one week. Accordingly, it cannot be said that the Bankruptcy Court abused its discretion in finding excusable neglect. Appellee is denied relief on this ground.

## **CONCLUSION**

For the reasons stated above, both Appellant's and Appellee's Appeals will be denied. An appropriate order will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.